COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

§      No. 08-10-00273-CV

§

IN THE MATTER OF I.L., A JUVENILE    §      Appeal from

§      65th District Court

§      of El Paso County, Texas

§      (TC # 09,00648)

## **O P I N I O N**

I.L. was adjudicated delinquent after a jury found that he had engaged in delinquent conduct by committing assault causing bodily injury. Following a hearing, the trial court issued a final judgment without disposition. On appeal, I.L. complains of charge error and evidentiary sufficiency. For the reasons that follow, we affirm.

## **FACTUAL BACKGROUND**

On April 23, 2009, the students in Jose Montoya's art class at Desert Wind Middle School were given their routine bathroom break. The class was made up of both 7th and 8th grade students. Appellant was in 8th grade at the time and I.M., the victim, was in 7th grade.

While the students took their break, Montoya went across the hall to the teachers' facility. When he returned to the classroom he noticed I.M. at the back of the class, "not his normal self." Montoya spoke with the boy, who told him, "The guys threw me in the trash can." I.M. was visibly upset, crying, in distress, and in pain.

Montoya took Appellant and two other boys--E.C. and D.G.--outside the classroom. The trio admitted to throwing I.M. in the trash can. Appellant claimed they did it because I.M. was

"little." The boys also said it was a joke and they were just playing. Montoya gave the boys a chance to apologize, but Appellant simply said, "I'm sorry, because you're just such a little shit." In Montoya's opinion, Appellant showed no remorse for his actions and even laughed while he apologized. Montoya then headed to file a report when Marco Tristan, the Dean of Instruction, walked down the hallway. Tristan took the three boys down to his office.

Once inside his office, Tristan asked the boys what happened. The boys were "very apologetic." Appellant claimed he had been the main instigator and asked Tristan to dismiss the other two boys. Tristan also spoke with I.M. As a result of their conversation, Tristan decided that I.M. had not been playing. He called I.M.'s mother, the parents of the three boys, and the Socorro Independent School District's Police Department.

The following day, Officer Jorge Murillo of the Socorro Independent School District Police Department went to Desert Wind Middle School to investigate the incident. He spoke with I.M.'s parents and also with I.M. directly. Officer Murillo testified that he observed red marks on the back of I.M.'s neck as well as a scratch on the left side of his stomach.

I.M.'s mother testified that her son was physically injured as a result of the incident. The boy's neck and waist area were hurt, and there were marks and bruises on his neck and hand. There was also swelling and it took three days for her son to recover.

I.M. testified that when he left the classroom, the restroom was full and he waited outside. Appellant, E.C., and D.G., grabbed him by his neck and pushed him head first into a trash can. I.M. resisted by putting his hands on the edge, but the three boys overpowered him. He fell down, hit his head, and heard his neck pop. As he tried to pull himself out, the boys shoved him down a second time. He again hit his head and heard his neck pop. At one point, the

trash can was knocked over.  The scenario was repeated yet a third time.  During the incident, the boys were laughing at him and he was crying.

The defense called E.C. and D.G. as witnesses.  E.C. testified that he, Appellant, D.G., and I.M. were playing with a soccer ball in Montoya's class just before the restroom break.  According to E.C., the boys were all playing around and having a good time.  No one was angry at I.M. or trying to hurt him.  E.C. testified that the boys grabbed I.M. and put him inside the trash can, but he reiterated that all of the boys, including I.M. were "playing," and that no one punched or kicked the trash can during the incident.  E.C. also testified that he did not intend to hurt I.M. when he pushed him into the trash can.  D.G.'s testimony essentially tracked that of E.C.  All of the boys were engaged in horseplay in Montoya's classroom just before the bathroom break.  D.G. had no ill will against I.M. and had no reason to want to hurt him.

Appellant testified in his own defense, claiming that all four boys were horsing around with a soccer ball prior to their break.  He heard someone say, "Let's--let's throw [I.M.] to the trash can."  Appellant admitted that he grabbed I.M. by the legs and threw him into the trash can but he did not intend to hurt him.   He did not see I.M. crying, but he knew the boy was upset during the incident.  Appellant apologized, but he denied cussing when doing so.

## PROCEDURAL BACKGROUND

On August 21, 2009, the State filed a petition alleging that Appellant engaged in delinquent conduct.  The live pleading at trial alleged Appellant:

> [D]id then and there intentionally, knowingly or recklessly cause bodily injury to [I.M.] by throwing the said [I.M.] into a trash can, in violation of Section 22.01 of the Texas Penal Code.

The case proceeded to a jury trial.

- 3 -

After hearing all the evidence, the jury found Appellant engaged in delinquent conduct by committing assault causing bodily injury against I.M. and adjudicated Appellant as delinquent. The presiding judge signed and filed an order of adjudication consistent with the jury's verdict and set a disposition hearing. After considering the evidence and the pre-disposition report, the court found that Appellant's parents "provide strong family support" and were able to provide Appellant with "suitable supervision at home." It determined that Appellant was not in need of rehabilitation and issued a final judgment without disposition.

On appeal, Appellant raises two issues. In Issue One, he complains of charge error. In Issue Two, he challenges the legal sufficiency of the evidence to prove he acted with the requisite mental state.

## CHARGE ERROR

In Issue One, Appellant contends that the abstract portion of the jury charge wrongfully included the full statutory definition of "recklessly," one of the three possible mental states for assault causing bodily injury. According to Appellant, the definition should have been limited to the language relating to the "result of conduct" and that, as submitted, the charge allowed the jury to adjudicate him delinquent for engaging in reckless behavior (a conduct-oriented charge) rather than recklessly injuring the complainant (a result-oriented charge). Appellant contends this amounts to fundamental and reversible error.

### *Standard of Review*

Appellate review of charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25-26 (Tex.Crim.App. 2009). First, we must determine whether error occurred. *Abdnor*, 871 S.W.2d at 732. If so, we must then evaluate whether sufficient harm resulted from the error to require

reversal. *Id*. at 731-32.

## *Was There Error?*

We begin our inquiry by examining whether there was error in the charge. The petition alleged that Appellant committed assault by "intentionally, knowingly, or recklessly" causing bodily injury to I.M. in violation of Section 22.01 of the Texas Penal Code. The full statutory definitions of "intentionally," "knowingly," and "recklessly" provide:

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> (b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

> (c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX.PENAL CODE ANN. § 6.03(a), (b), & (c)(West 2011). Here, the abstract portion of the charge limited the definitions of "intentionally" and "knowingly" to the result-of-conduct language:

> A person acts **intentionally**, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

> A person acts **knowingly**, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. [Emphasis in original].

However, the charge included the full statutory definition of "recklessly." In other words, the definition included the phrase "with respect to *circumstances surrounding his conduct or* the

- 5 -

result of his conduct." [Emphasis added].

On appeal, Appellant's complaint is based on the italicized text. He maintains that the italicized language should have been excluded because, as written, the charge allowed the jury to adjudicate him delinquent for engaging in reckless behavior (a conduct-oriented charge) rather than recklessly injuring the complainant (a result-oriented charge). We agree.[1]

There are three conduct elements which may be involved in any offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *See Hughes v. State*, 897 S.W.2d 285, 295 n.14 (Tex.Crim.App. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995); *Cook v. State*, 884 S.W.2d 485, 487 (Tex.Crim.App. 1994). As the Court of Criminal Appeals laid out in *Hughes* and *Cook*, a proper jury charge limits the definitions of the applicable culpable mental states to include only the language regarding the relevant conduct elements. *See Hughes*, 897 S.W.2d at 295-96; *Cook*, 884 S.W.2d at 491-92.

In *Cook*, the defendant was charged with murder and convicted of the lesser included offense of voluntary manslaughter. *Cook*, 884 S.W.2d at 485, 487. The definitions of the applicable mental states--"intentionally" and "knowingly"--included the full statutory definitions. *Id*. The defendant objected to the charge, arguing that because murder is a result-of-conduct offense, the definitions of the culpable mental states should have been limited to the result language only. *Id*. at 486. The Court of Criminal Appeals agreed and held that because murder is a result-of-conduct offense, the trial court erred in refusing to limit the definitions of the culpable mental states. *Id*. at 491-92.

---

[1] Initially we note that I.M. was charged with a criminal offense. Therefore, it is within this context that we review whether the juvenile court erred in submitting the jury charge. *See e.g. In the Matter of D.C.S.*, No. 10-03-00393-CV, 2004 WL 2406763, at *1 (Tex.App.--Waco Oct. 27, 2004, no pet.)(mem. op.)(not designated for publication)("Evaluating the substance of a criminal jury charge under the body of law to review a civil jury charge does not work.")

Similarly, in *Hughes*, a jury convicted the defendant of capital murder of a peace officer based on a jury charge which included the following definitions of the applicable mental states:

> A person acts 'intentionally,' or with intent, with respect *to the nature of his conduct* or to a result of his conduct when it is his conscious objective or desire to *engage in the conduct* or cause the result.
>
> *A person acts 'knowingly,' or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.* A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. [Emphasis in original].

*Hughes*, 897 S.W.2d at 294. The appellant complained that the italicized portions allowed the jury "to find criminal liability from the knowledge of conduct or circumstances surrounding the conduct (ie; intent to pull trigger) rather than from the consequences or results of the conduct (intent to cause death of deceased)." *Id*. at 295. The Court of Criminal Appeals looked to the indictment and found that the offense could be viewed to include two of the three conduct elements: (1) the result-of-conduct element (appellant intentionally or knowingly caused the death of the deceased); and (2) the circumstances surrounding the conduct (appellant knew the deceased was a peace officer). *Id*. at 295. But because the offense did not contain a nature-of-conduct element, the court found the trial court erred by failing to limit the definitions of the culpable mental states to the result and circumstances of conduct elements. *Id*. at 296, *citing Cook*, 884 S.W.2d at 491-92.

Assault causing bodily injury is a result-oriented offense. Therefore, the proper definitions of the culpable mental states (intentionally, knowingly, recklessly) should be limited to include only the result of conduct element. *See Hughes*, 897 S.W.2d at 295; *Cook*, 884 S.W.2d at 489 n.3. Accordingly, the trial court erred. *See Hughes*, 897 S.W.2d at 296; *Cook*, 884 S.W.2d at 491-92. We must now analyze the error for harm. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005).

*Harm Analysis*

Under both the civil and criminal rules of procedure, a party must make a timely, specific objection and obtain a ruling on that objection to preserve error for appeal. *See* TEX.R.APP.P. 33.1. Both versions provide that unpreserved charge error will not require reversal unless it rises to the level of fundamental error. *See In the Matter of A.A.B.*, 110 S.W.3d 553, 558 (Tex.App.--Waco 2003, no pet.), *citing State v. Santana*, 444 S.W.2d 614, 615 (Tex. 1969) *and Casteel-Diebolt v. Diebolt*, 912 S.W.2d 302, 304 (Tex.App.--Houston [14th Dist.] 1995, no writ)(cases recognizing that, in a civil trial, when an appellant fails to properly preserve errors in the charge by objection or request, he may still obtain a reversal of a civil judgment on the basis of such error if he can demonstrate that the error amounts to "fundamental error."); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(op. on reh'g)(in a criminal case, an appellant who failed to object to a flawed instruction must demonstrate the error was "fundamental error."). Under the civil rules, an error is fundamental when it "directly and adversely affects the interest of the public generally, as that interest is declared in the statutes or Constitution of this state." *In the Matter of A.A.B.*, 110 S.W.3d at 558, *citing Ramsey v. Dunlop*, 146 Tex. 196, 202, 205 S.W.2d 979, 983 (1947), *cited by Santana*, 444 S.W.2d at 615; *accord In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999). Conversely, in criminal cases, error is fundamental only if it was so egregious and created such harm that the appellant was denied a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171.

Unless there is a conflict within the Texas Family Code, juvenile proceedings are governed by the Texas Rules of Civil Procedure. TEX.FAM.CODE ANN. § 51.17(a)(West 2008); *In the Matter of M.R.*, 858 S.W.2d 365, 366 (Tex. 1993); *In the Matter of M.P.*, 126 S.W.3d 228, 230 (Tex.App.--San Antonio 2003, no pet.). Since there is no specific provision

governing jury charges in juvenile cases, the Rules of Civil Procedure govern. *See In the Matter of M.P.*, 126 S.W.3d at 230, *citing In the Matter of A.A.B.*, 110 S.W.3d 553, 555-56 (Tex.App.--Waco 2003, no pet.); *In re D.I.B.*, 988 S.W.2d 753, 756 (Tex. 1999)(noting that juvenile delinquency proceedings are to be governed by the civil rules of appellate procedure as far as practicable.).

But juvenile proceedings are not wholly civil proceedings; they are considered "quasi-criminal in nature." *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999); *In the Matter of L.D.C.*, 357 S.W.3d 124, 129 (Tex.App.--San Antonio 2011, pet filed); *In the Matter of G.M.P.*, 909 S.W.2d 198, 201 (Tex.App.--Houston [14th Dist.] 1995, no writ). The Texas Supreme Court has acknowledged that the general rules applicable in adult civil proceedings cannot be uniformly applied in juvenile proceedings. *In re D.I.B.*, 988 S.W.2d at 756; *see also In re C.O.S.*, 988 S.W.2d at 765 (expressing concern with the problems in applying different preservation rules in juvenile delinquency proceedings than in adult criminal proceedings and stating, "Our general rules requiring preservation in the trial court are just that, general rules, and cannot be applied across the board in juvenile proceedings."); *Santana*, 444 S.W.2d at 615 (noting that "juvenile proceedings are not designed to be conducted as ordinary adversary proceedings"). The court in *C.O.S.* also noted that it is "unwise and problematic to apply one preservation rule in adult, criminal proceedings and another, stricter rule in juvenile cases." *In re C.O.S.*, 988 S.W.2d at 767. Thus, the court found that precedent from analogous adult criminal proceedings may be instructive in juvenile cases. *See id.* at 765-67; *see also In re D.I.B.*, 988 S.W.2d at 756 (looking to adult criminal jurisprudence to determine when a harm analysis should be performed in juvenile delinquency proceedings).

The difficulty in applying the law based on this interaction between the civil and criminal

- 9 -

rules is apparent in situations where, as here, the reviewing court must determine whether to perform a harm analysis under the civil or criminal standard for reversible error.[2] *See In re L.D.C.*, 357 S.W.3d at 131. Courts of appeals have repeatedly noted the lack of guidance. *See In re L.D.C.*, 357 S.W.3d at 131-32, 132 n.2 (stating, "Neither the Rules of Civil Procedure nor the Texas Family Code provide clear guidance as to whether to apply a civil harm analysis or a criminal harm analysis for juvenile jury charge error," and citing several opinions discussing the problem.); *see also In the Matter of A.C.*, No. 11-09-00164-CV, 2011 WL 3925516, at *6 (Tex.App.--Eastland Sept. 8, 2011, pet. denied)(recognizing the discrepancies between courts in choosing whether to apply civil or criminal rules to the harm analysis); *In re M.P.*, 126 S.W.3d at 231-32 (noting disagreement between the courts of appeals as to the proper harm analysis for jury charge error in juvenile delinquency proceedings but holding that the court did not have to choose between a criminal and a civil harm analysis because the result in the case would be the same under both). The differing approaches illustrate the problematic nature of quasi-criminal status. Several intermediate courts have chosen to apply Article 36.19 of the Texas Code of Criminal Procedure and *Almanza* to determine whether charge error has been preserved in juvenile delinquency proceedings. *See In the Matter of K.W.G.*, 953 S.W.2d 483, 488 (Tex.App.--Texarkana 1997, pet. denied)(applying the *Almanza* egregious harm standard to a juvenile delinquency proceeding because "charging errors affect the substantive rights of juveniles"); *In the Matter of B.S.A.*, No. 03-04-00319-CV, 2006 WL 954095, at *3 (Tex.App.--Austin Apr. 13, 2006, no pet.)(mem. op.)(using the *Almanza* harm analysis to analyze whether unpreserved error was "fundamental error"); *In the Matter of C.M.*, No. 11-02-00150-CV, 2003 WL 1414436, at *2 (Tex.App.--Eastland Mar. 20, 2003, no pet.)(mem. op.)(applying *Almanza*

---

[2] The standard of analyzing harm from a charge error in a criminal setting was set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).

egregious harm standard to jury charge error).  However, the Waco court in *In re A.A.B.,* 110

S.W.3d 553 (Tex.App.--Waco 2003, no pet.), applied a civil harm analysis to charge error, thus

disavowing their earlier opinion in *In the Matter of M.E.R.*, 995 S.W.2d 287 (Tex.App.--Waco

1999, no pet.) in which they analyzed preservation of jury charge error under the *Almanza*

standard.[3]  *See In re A.A.B.*, 110 S.W.3d at 555-59; *In re M.E.R.*, 995 S.W.2d at 291.

Appellant failed to object to the definition of "recklessly" either during the charge

conference or at any other point during trial.[4]  Under Texas Rule of Appellate Procedure 33.1, he

has preserved nothing for appeal.[5]  He attempts to avoid this procedural default by classifying the

error as fundamental.

The burden is higher for an appellant trying to reverse a civil judgment based on

unpreserved error, than for an appellant in a criminal matter.  In light of the Supreme Court's

concerns in applying one rule in adult criminal proceedings and another, stricter rule in juvenile

cases, we choose to conduct our harm analysis under the criminal standard set forth in *Almanza.*

*See In re C.O.S.*, 988 S.W.2d at 767.

We have already determined there was error in the jury charge.  Under *Almanza*, an

appellant who did not preserve error, as here, must show he suffered "fundamental error."

*Almanza*, 686 S.W.2d at 171.  An error is "fundamental" only if it was so egregious and created

---

[3]  Among others, the following courts have applied the *Almanza*, criminal harm analysis to jury charge error in a juvenile delinquency proceeding: *In re A.C.*, 2011 WL 3925516, at *6; *In the Matter of A.E.B.*, 255 S.W.3d 338, 350 (Tex.App.--Dallas 2008, pet. dism'd)(jury charge error, which was subject to a timely objection was analyzed for harm using the *Almanza* standard); *In re E.F.*, 986 S.W.2d 806, 808-09, 810 (Tex.App.--Austin 1999, pet. denied)(same).  *In re K.W.G.*, 953 S.W.2d at 488 (applying *Almanza* to alleged unpreserved charge error).

[4]  During the charge conference, Appellant objected to the definitions of "intentionally" and "knowingly" as defined in the abstract portion of the jury charge.  The trial court sustained Appellant's objections and adjusted the definitions of "intentionally" and "knowingly" accordingly.  However, Appellant did not object to the definition of "reckless" at any point during the charge conference.  Likewise, a review of the remainder of the record reveals no such objection either orally or in writing.

[5]  We note that Rule 33.1 applies to both criminal and civil cases, since Appellant did not make any objection at trial, he failed to preserve error under either the criminal or civil rules.

- 11 -

such harm that the appellant was denied a fair and impartial trial. *Id*. In assessing harm arising from charge error, we must determine the actual degree of harm in light of: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

First, we look to the charge as a whole. The *Hughes* court determined the trial court erred by including the full statutory definitions of "intentionally" and "knowingly" in the abstract portion of a capital murder jury charge. *Hughes*, 897 S.W.2d at 295-96. However, the court looked to the application portion and concluded that:

> [B]ecause the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states to result and circumstances of conduct.

*Hughes*, 897 S.W.2d at 295-96. Because error had been preserved, the court was reviewing the charge for "some" harm under *Almanza*. *Id*. at 296. Here, as in *Hughes*, the trial court properly limited the definition of recklessness in the application paragraph. The application paragraph provided that the jury was to adjudicate Appellant as delinquent only if he "intentionally, knowingly or recklessly cause[d] bodily injury to [I.M.] . . . ." Thus, although the jury was provided a definition that recklessness can also occur with regard to the circumstances of the conduct, the jury was also instructed that it could only adjudicate Appellant guilty if he was reckless with respect to the result of his conduct. Certainly, if the trial court's failure to limit the definition of recklessness in the abstract portion of the charge when it is properly limited elsewhere does not rise to the level of "some harm" then it most definitely does not rise to the level of egregious harm. *See Hughes*, 897 S.W.2d at 296; *Collins v. State*, No. 09-04-407-CR, 2005 WL 3074154, at *6-7 (Tex.App.--Beaumont Nov. 16, 2005, no pet.); *see also*, *Medina v.*

- 12 -

*State*, 7 S.W.3d 633, 640 (Tex.Crim.App. 1999)(stating that where the application paragraph in a charge correctly instructs the jury, an error in the abstract paragraph is not egregious).

However, out of an abundance of caution, and in light of *Dougherty v. State*, No. PD-1411-05, 2006 WL 475802, at *1 (Tex.Crim.App. Mar. 1, 2006)(*per curiam*)(not designated for publication), we will continue our harm analysis to include consideration of all four *Almanza* factors.[6] *See Almanza*, 686 S.W.2d at 171.

The second factor we must consider is the state of the evidence. *See Almanza*, 686 S.W.2d at 171. The State's evidence appropriately focused on the result of Appellant's conduct. The State's questioning revolved around the nature and degree of I.M.'s injury and Appellant's participation in the actual act of pushing I.M. into the trash can. The fact that Appellant purposefully picked up I.M. and forced him head first into the trash can (more than once) is appropriate evidence for the State to present in order to meet its burden of proof. Likewise, as to the third *Almanza* factor, the State's argument focused on Appellant's mental state in causing the result of his conduct, rather than on the nature of his conduct. *See Almanza*, 686 S.W2d at 171. Finally, we look to "any other relevant information." *See Almanza*, 686 S.W2d at 171. Once again we find nothing supporting Appellant's contention of egregious harm.

After analyzing the error in light of all four *Almanza* factors, we conclude that Appellant has not suffered egregious harm. We overrule Issue One.

---

[6] In *Dougherty*, a per curium, unpublished opinion issued after *Hughes* and *Patrick*, the Court of Criminal Appeals held that an appellate court improperly limited its harm analysis when it determined that the abstract portion of the charge did not cause egregious harm because the application paragraph was correct without consideration of the remaining *Almanza* factors. *See Dougherty v. State*, No. PD-1411-05, 2006 WL 475802, at *1.

**LEGAL SUFFICIENCY**

In Issue Two Appellant, challenges the legal sufficiency of the evidence to support the adjudication and subsequent disposition.

*Standard of Review*

Although juvenile appeals are categorized as civil proceedings, we use the same standards applicable in criminal appeals when reviewing the sufficiency of the evidence to support a finding that a juvenile engaged in delinquent conduct. *See In the Matter of D.R.T.*, 339 S.W.3d 208, 210 (Tex.App.--El Paso 2011, no pet.); *In re H.G.G.D.*, 310 S.W.3d 43, 45 (Tex.App.--El Paso 2010, no pet.); *In the Matter of M.D.T.*, 153 S.W.3d 285, 287 (Tex.App.--El Paso 2004, no pet.). Accordingly, in analyzing Appellant's legal sufficiency challenge, we review the evidence in the light most favorable to the verdict and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010)(holding that the *Jackson* legal-sufficiency standard is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re D.R.T.*, 339 S.W.3d at 209-10.

As a reviewing court, we do not resolve any conflict of fact, or re-evaluate the weight of any evidence or credibility of any witnesses. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000); *In re H.G.G.D.*, 310 S.W.3d at 46, *citing Adelman v. State*, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992). Instead, our duty is to determine whether both the explicit and implicit findings of the jury are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. If the record supports conflicting

inferences, we presume that the fact finder resolved any inconsistencies in favor of the verdict, and we defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000); *Matson v. State*. 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). This standard is applicable for both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 158 (Tex.Crim.App. 1991), *overruled on other grounds, Paulson v. State*, 28 S.W.3d 570 (Tex.Crim.App. 2000).

In addition, we determine the sufficiency of the evidence based on a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *Thomas v. State*, 303 S.W.3d 331, 333 (Tex.App.--El Paso 2009, no pet.). A correct jury charge is one that (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex.Crim.App. 2001); *Malik*, 953 S.W.2d at 240; *Thomas*, 303 S.W.3d at 333. The hypothetically correct jury charge, as applicable to the offense of assault causing bodily injury, would state whether Appellant intentionally, knowingly, or recklessly caused bodily injury to the victim. *See* TEX.PENAL CODE ANN. § 22.01(a)(1)(West 2011).

Appellant was charged and adjudicated under Section 22.01(a)(1) of the Texas Penal Code which provides that a person commits assault by intentionally, knowingly, or recklessly causing bodily injury to another. TEX.PENAL CODE ANN. § 22.01(a)(1). Therefore, the State was required to prove beyond a reasonable doubt that: (1) I.M. suffered bodily injury; and (2) that Appellant intentionally, knowingly, or recklessly caused such a result. *See id*. Appellant does not contest the sufficiency of the evidence to prove bodily injury.[7] Rather, Appellant

---

[7] Although Appellant does not specifically challenge the sufficiency of the evidence to prove that Appellant inflicted bodily injury, we note that the evidence was in fact sufficient to prove this element beyond a reasonable

argues that the State failed to prove that Appellant caused the bodily injury with the requisite mental state, *i.e.* that Appellant either intentionally, knowingly, or recklessly caused the resulting injury.

A culpable mental state is almost always proven by circumstantial evidence. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991); *Gant v. State,* 278 S.W.3d 836, 839 (Tex.App.--Houston [14th Dist.] 2009, no pet.); *Pitonyak v. State*, 253 S.W.3d 834, 844 (Tex.App.--Austin 2008, pet. ref'd). Proof of knowledge or intent may be inferred from both direct evidence and from evidence of the circumstances surrounding the act. *See Brown v. State*, 122 S.W.3d 794, 800 (Tex.Crim.App. 2003), *cert. denied*, 541 U.S. 938, 124 S.Ct. 1678, 158 L.Ed.2d 359 (2004); *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex.Crim.App. 1996). Further, in determining culpability for an offense, a jury may consider events occurring before, during, and after the offense. *See Beltran v. State*, 593 S.W.2d 688, 689 (Tex.Crim.App. 1980); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App. 1995); *Pitonyak*, 253 S.W.3d at 844; *Ramirez v. State*, 229 S.W.3d 725, 729 (Tex.App.--San Antonio 2007, no pet.). A jury may infer intent from the acts, words, and conduct of the accused, as well as from the extent of the injuries and the relative size and strength of the parties. *Lindsey v. State*, 501 S.W.2d 647, 648 (Tex.Crim.App. 1973); *Patrick*, 906 S.W.2d at 487. In other words, a jury can infer knowledge

---

doubt.

Bodily injury is defined as "physical pain, illness, or any impairment of physical condition," and is proven by evidence that the victim suffered "some" pain. TEX.PENAL CODE ANN. § 1.07(a)(8); *Lane v. State*, 763 S.W.2d 785, 786-87 (Tex.Crim.App. 1989). A jury may use their common sense and apply their common knowledge, observations, and experience to draw reasonable inferences about whether or not an act results in pain. *Id.* Consequently, the victim of an assault need not expressly testify that he suffered pain at the hands of the accused before the jury can reasonably infer the existence of pain. *Id.*

Here, there was testimony from several witnesses testified that that I.M. had red marks and swelling, was in pain and was crying as a result of the incident. The State also entered photographs of I.M.'s injuries into evidence, which were consistent with the physical altercation. Accordingly, based on the jury's common understanding of pain, it could infer I.M. suffered "physical pain" as a result of the incident. *Randolph v. State*, 152 S.W.3d 764, 774 (Tex.App.--Dallas 2004, no pet.).

or intent from the acts, conduct, and remarks of the accused and from the surrounding circumstances. *Gant*, 278 S.W.3d at 839.

Appellant testified that he purposefully picked up I.M. and pushed him head first into a trash can. By his own admission, Appellant intended the conduct. As we have noted, however, assault is a result of conduct offense. *Dolkart v. State*, 197 S.W.3d 887, 893 (Tex.App.--Dallas 2006, pet. ref'd); *Ford v. State*, 38 S.W.3d 836, 844-45 (Tex.App.--Houston [14th Dist.] 2001, pet. ref'd). As such, the essential focus of the statute is to punish the defendant for causing the specified result--the bodily injury. *Dolkart*, 197 S.W. 3d at 893; *see also Brooks v. State*, 967 S.W.2d 946, 948-49 (Tex.App.--Austin 1998, no pet.)(stating that to be guilty of assault by bodily injury, one must intend the result of the conduct, not just the conduct itself). That said, "Texas law, like that of all American jurisdictions, presumes that a criminal defendant is sane and that he intends the natural consequences of his acts." *Ruffin v. State*, 270 S.W.3d 586, 591-92 (Tex.Crim.App. 2008). Here, Appellant not only acknowledged that he purposefully put I.M. into the trash can, but that he did so more than once.

While there was testimony that I.M. was playing around with the other boys, I.M. himself testified that he was not playing and that he was crying throughout the entire incident. There was also evidence that I.M. was struggling and that the boys were laughing at him. Appellant testified that I.M. was smaller than the others and that they threw him into the trash can because he was little.

And according to the testimony of I.M. and Montoya, when given the opportunity to apologize, Appellant did so by using curse words. The jury is the sole judge of witness testimony and the weight to give such testimony. As fact finder, the jury was free to believe or disbelieve any or all of any witness testimony, and in conducting our review we presume that the

jury resolved any conflicts in the evidence in favor of the verdict. *See Brown v. State*, 122 S.W.3d 794, 800 (Tex.Crim.App. 2003); *Moreno v. State*, 702 S.W.2d 636, 641 (Tex.Crim.App. 1986); *Moore v. State*, 54 S.W.3d 529, 539 (Tex.App.--Fort Worth 2001, pet. ref'd)(cases recognizing that intent is a question of fact and, therefore, within the sole purview of the jury).

Viewing the evidence in the light most favorable to the verdict, we find a rational jury could have reasonably inferred from Appellant's acts, conduct, and remarks and from the surrounding circumstances that he possessed the requisite culpable mental state to support a conviction for assault causing bodily injury. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Accordingly, we hold that the evidence is legally sufficient to support Appellant's conviction. We overrule Issue Two and affirm the trial court's judgment.


August 8, 2012 _____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

- 18 -