COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| DAVID ZAVALA, | § | |
| | | No. 08-17-00136-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 120th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20140D05270) |
| | § | |

## **O P I N I O N**

A jury found David Zavala guilty of aggravated assault of a person with whom he was in a dating relationship by use of a deadly weapon. Zavala appeals his conviction in four issues, two of which challenge the jury charge, one which challenges the indictment, and the remaining one challenging the legal sufficiency of the evidence to support his conviction. We affirm.

## **BACKGROUND**

On October 21, 2011, Zavala pleaded guilty to an unrelated aggravated assault with a deadly weapon charge and was placed on community supervision for a term of five years. While completing his community supervision, Zavala entered into a dating relationship[1] with his

---

[1] As defined by the Texas Family Code, a "dating relationship" is "a relationship between individuals who have or

probation officer, Cynthia Mendoza. This relationship began slightly less than a year before the commission of the instant offense and remained ongoing at the time of the offense.

According to a statement Zavala gave to law enforcement which the State presented at trial, at approximately 10 a.m. on October 5, 2014, Mendoza picked Zavala up in her truck to go to breakfast and church. They then went back to Mendoza's house at approximately 3 p.m. and Zavala borrowed Mendoza's truck, driving it to his stepbrother's house. While there, Zavala consumed approximately four Bud Light "tall boys." Zavala returned to Mendoza's house at approximately 8 or 9 p.m., and he and Mendoza began arguing in front of the house about Zavala's drinking. According to trial testimony from Mendoza's mother, Elvia Garcia, she looked outside of the house into the front yard and saw Zavala slap Mendoza in the face. When Garcia went outside and asked if Mendoza was okay, Zavala began swearing at Garcia and threw two beer cans at her. Zavala and Mendoza got back into Mendoza's truck and drove off, with Zavala driving. Zavala then drove to his mother's residence so that he could get his motorcycle, and on the way there Mendoza called Garcia with her cell phone in an excited state. When Garcia asked what was wrong, the call was disconnected.

Zavala and Mendoza continued to argue after they arrived at Zavala's mother's residence. Zavala put additional cans of beer into a backpack and started his motorcycle, but then decided not to drive it because he was angry and "buzzing." Zavala and Mendoza then drove away in Mendoza's truck, with Zavala again driving. At 9:53 p.m., Zavala called 911 with a cell phone and told the operator that he was "going to murder [his] girlfriend's mom, [his] girlfriend, and her

---

have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b). Neither party disputes that Zavala's relationship with Mendoza constituted a "dating relationship" as defined by Section 71.0021(b).

2

sister" and that he "was going to murder you guys too for listening to the call." Zavala hung up after making these statements.

At approximately 10:44 p.m., less than an hour after Zavala made the 911 call, Zavala ran Mendoza's truck off the road, hit a pole, and rolled the truck. Karen Sanchez, an eyewitness to the crash, called 911 and told the operator that there was a "girl stuck inside the truck" and that the guy was "talking really bad to the girl inside the car" and that she saw "some beer cans outside." Sanchez further stated that the "guy [was] really loud and obnoxious and he's not really wanting to talk to anybody" and that Zavala was "being aggressive." Sanchez also told Officer Chad Corpuz, who responded to the scene, that the truck passed by her "really fast" before running a red light and rolling. When Officer Corpuz arrived at the scene, he saw that Zavala was in tears and was mumbling that he was "sorry" as he attempted to help Mendoza, who was still inside the passenger area of the truck. Officer Corpuz also noted several signs of intoxication from Zavala at the crash scene. Although Mendoza was still alive when she was taken to the hospital, she died shortly thereafter.

While at the crash scene, Zavala did not respond when asked if he needed medical treatment and told Officer Corpuz that a vehicle passed him at high speed, forcing Zavala to "whip" the truck's steering wheel to the right and resulting in the crash. Officer Corpuz arrested Zavala for intoxication assault based on the signs of intoxication he observed in Zavala and the fact that Zavala admitted he had been driving the truck. While en route to the police station, Zavala stated that he wanted medical treatment after all, and so Officer Corpuz called an ambulance and Zavala was taken to the hospital. Zavala then told paramedics that the truck was struck by another vehicle, causing the crash.

After the hospital discharged him to police custody, Zavala told investigators that Mendoza grabbed the steering wheel and jerked it, causing the truck to strike the curb, hit a post, and roll. Zavala initially stated that Mendoza had not been drinking and was not suicidal, and that Mendoza may have grabbed the steering wheel in retaliation for an argument they had had earlier that evening. When investigators confronted Zavala with Sanchez's statement that the truck had run the red light, Zavala stated that he had seen the lights change and told Mendoza, "Ah, fuck it, let's go." Zavala stated that he did that "[j]ust because [he] was being an idiot, period." Zavala stated that he did "[n]ot really" want to hurt himself or Mendoza by running the red light, but that he did so because "in the anger that . . . [he] was feeling at the time, and just because [he had] a lot of feeling[s]—mixed emotions[.]" Zavala also stated that Mendoza said, "Oh, my God, David," when he ran the red light because he had done so before. Also during his interview, Zavala recalled making the 911 call in which he threatened Mendoza, her family, and the operator for listening, claiming he made the remarks because he was "fed up with them" and that he was "being an idiot," but he did not mean the statements.

The State charged Zavala with aggravated assault with a deadly weapon causing serious bodily injury to Mendoza, a person with whom Zavala was in a dating relationship as defined by TEX. FAM. CODE ANN. § 71.0021(b). In particular, the indictment alleged that Zavala intentionally, knowingly, or recklessly caused serious bodily injury to Mendoza by running a red light and/or colliding with a pole while Mendoza was a passenger in Zavala's vehicle, which was alleged as a deadly weapon used in the commission of the offense.

During its opening statements at trial, the State noted that Zavala had expressed his intent to kill Mendoza in the 911 call placed moments before the crash, and that it expected the evidence

4

to show that Mendoza intentionally, knowingly, or recklessly caused the "ultimate form of serious bodily injury." At trial, the State presented, *inter alia*, the 911 calls made by Zavala and Sanchez, testimony from Officer Corpuz and Garcia, and a transcript of Zavala's interview with law enforcement. During its closing argument, the State argued that it had proven "to 100 percent certainty" that Zavala had acted recklessly, pointing to Zavala's interview statement that "Yeah, I [was] being reckless" by driving in the manner he did, although it acknowledged that Zavala later retracted that statement. The defense countered that while Zavala's actions might rise to the level of recklessness if the jury believed that he ran the red light, the evidence was insufficient to prove that Zavala had done so.

In the jury charge, the trial court included the full statutory definitions of the three culpable mental states. Included in the charge's language were the definitions for "intentionally" and "knowingly," along with both the "nature of conduct" and "result of conduct" elements of those terms. Further, the charge's definition of "recklessly" included both the "circumstances surrounding [the] conduct" and the "result of . . . conduct" elements of that mental state. The defense raised concerns about the charge's definition of "reckless," mentioning he had seen a different definition in the library. When the State explained that the definition tracked the language of the statute verbatim, the Court stated it would "give whatever is the statutory instruction." The defense replied, "And that's fine, Judge. Being that the State has submitted it, that's our concern."

The jury convicted Zavala of aggravated assault of a person with whom he was in a dating relationship with the use of a deadly weapon and sentenced him to thirty years' incarceration. This appeal follows.

**DISCUSSION**

5

Zavala appeals his conviction in four issues, arguing that (1) the jury charge was erroneous because the trial court did not limit the definitions of "intentionally," "knowingly," and "recklessly," to the result of the conduct for the assault and aggravated assault offenses, and because the charge included the "nature of conduct" and "circumstances surrounding his conduct" as part of the definitions of those terms; (2) such error caused Zavala egregious harm, requiring reversal; (3) the State did not allege in its indictment the acts relied upon to show that Zavala acted recklessly, violating TEX. CODE CRIM. PROC. ANN. art. 21.15; and (4) the evidence was insufficient to sustain a conviction for the charged offense because the indictment alleged (and the charge instructed the jury to find Zavala guilty if they found beyond a reasonable doubt) that Zavala intentionally, knowingly, or recklessly "[ran] a red light and/or collid[ed] with a pole while Cynthia Mendoza was a passenger in [Zavala's] vehicle[.]" We address Zavala's issues out of numbered order.

## 1. Legal Sufficiency

We first consider Zavala's fourth issue, in which he argues that the evidence was legally insufficient to support his conviction because the jury could not have reasonably inferred that Zavala intended to crash the truck and cause injury to Mendoza since he was also present in the truck at the time of the crash. In a legal sufficiency challenge, we determine whether, viewing all evidence in the light most favorable to the jury's verdict, any rational jury could have found the essential elements of the charged offense beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). Evidence may be legally insufficient when the record "contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes

6

a reasonable doubt." *Id.* (citing *Jackson*, 443 U.S. at 320). We may not re-weigh evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Further, we presume that the jury resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that determination because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to their testimony. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Finally, in determining the legal sufficiency of the evidence to show a defendant's culpable mental state, and when faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record— that the trier of fact resolved any such conflict in favor of the prosecution, and [we] must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991); *see also Liller v. State*, No. 08-16-00309-CR, 2018 WL 3583877, at *3, 6 (Tex. App.—El Paso July 26, 2018, pet. ref'd) (not designated for publication).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009), *cert. denied*, 558 U.S. 992 (2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (quoting *Malik*, 953 S.W.2d at 240).

The indictment in this case alleged that Zavala intentionally, knowingly, or recklessly caused Mendoza's injuries, and this language was mirrored in the abstract and application

7

paragraphs in the jury charge. As it applies to the charged offense of aggravated assault, a person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person acts recklessly with respect to result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c). A defendant's culpable mental state is generally proven by circumstantial evidence, and the jury is entitled to consider events before, during, and after the commission of the offense. *Workman v. State*, No. 08-07-00299-CR, 2010 WL 109704, at *10 (Tex. App.—El Paso Jan. 13, 2010, pet. ref'd) (not designated for publication) (citing *Lopez v. State*, 630 S.W.2d 936, 942 (Tex. Crim. App. 1982); *Mouton v. State*, 923 S.W.2d 219, 223 (Tex. App.—Houston [14th Dist.] 1996, no pet.)). Culpability may be inferred from the acts, words, and conduct of the accused, including inconsistent statements made by the accused. *Workman*, 2010 WL 109704, at *10 (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)).

Here, Zavala argues that the evidence supporting the mental state element of the charged offense was insufficient, such that the State did not prove that he intentionally, knowingly, or recklessly caused bodily harm to Mendoza. We disagree. The State presented several pieces of evidence which tended to support the culpable mental states related to the charged offense. For example, the State presented the 911 call made shortly before the crash in which Zavala can be heard telling the operator that he was going to "murder" Mendoza, which is direct evidence tending to support his intent to harm Mendoza. Sanchez, who made a post-crash 911 call, also stated during her call and told responding officers that the truck was going too fast, suggesting that Zavala

8

intentionally, knowingly, or recklessly crashed the truck and caused Mendoza's injuries. Officer Corpuz also testified that when he encountered Zavala at the crash scene, he overheard Zavala tell Mendoza he was sorry even though she was unconscious while he talked, which further supports Zavala's consciousness of guilt.

Likewise, Zavala admitted during his interview with law enforcement that (1) he had been arguing with Mendoza prior to the crash and had told her that he "hope[d] [that she would] fucking die, then" before the crash occurred; (2) he had been consuming alcohol prior to driving, which was supported by Officer Corpuz's testimony that he noticed several signs of intoxication in Zavala at the crash scene; and (3) that he intentionally ran the red light and was "being an idiot" when he did so, which then led to the crash and Mendoza's injuries. Zavala's conflict with Mendoza that night was also supported by her mother's testimony that he slapped her in the face while they were at her mother's house. These pieces of evidence constitute circumstantial evidence tending to establish Zavala's intent to harm Mendoza, his knowledge that his actions would result in Mendoza's injuries, and/or his recklessness in doing so. *See Workman*, 2010 WL 109704, at *10 (defendant's culpable mental state may be established by circumstantial evidence); *see also Liller*, 2018 WL 3583877, at *5 (evidence that defendant and victim had been fighting prior to defendant's acts leading to victim's death tended to support the defendant's intent to commit result-oriented offense of murder).

Zavala also argues that he was present in the truck when he crashed it and that he denied being suicidal that night, making it less likely that he intentionally crashed the truck and caused Mendoza's injuries. Nevertheless, the jury was free to reject this theory and make the reasonable inference that, combined with other evidence, Zavala intentionally, knowingly, or recklessly

caused Mendoza's injuries by crashing the truck, regardless of the risk of danger to himself, and we resolve this conflict in the evidence by deferring to the jury's verdict. Zavala's inconsistent accounts of the events also tends to support his intent to commit the offense and conceal his illegal conduct, and again we defer to the jury's verdict when resolving conflicts in the evidence. *See Guevara v. State*, 152 S.W.3d 45, 49–50 (Tex. Crim. App. 2004) (inconsistent statements are probative of wrongful conduct and guilt); *Workman*, 2010 WL 109704, at *10; *see also Merritt*, 368 S.W.3d at 525–26; *Brooks*, 323 S.W.3d at 899.

Giving deference to the jury's verdict and its resolution of the conflicting inferences in the evidence, as we must, we hold that the State proved the culpable mental state element of the charged offense beyond a reasonable doubt and that Zavala's conviction is supported by legally sufficient evidence. *See Merritt*, 368 S.W.3d at 525–26; *Brooks*, 323 S.W.3d at 899; *Workman*, 2010 WL 109704, at *10; *Liller*, 2018 WL 3583877, at *5–6. Zavala's fourth issue is overruled.

## 2. Jury Charge

### a. Failure to Limit Definitions

We next address Zavala's first and second issues together as both issues address whether the jury charge was erroneous because it contained both the "nature of conduct" and the "circumstances surrounding [the] conduct" definitions for "intentionally," "knowingly," and "recklessly," as pertained to the charged offense of aggravated assault. The State concedes that the trial court should not have included the "nature of conduct" and the "circumstances surrounding [the] conduct" definitions for the aforementioned culpable mental states. We agree.

A jury charge should distinctly set forth the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14. Assault and aggravated assault are "result" type crimes as opposed to a

"conduct" offense. Thus, a charge is erroneous where it includes language about the defendant's conduct within the definitions of the relevant culpable mental states, as such terms should be defined and limited to conduct which caused a particular result. *See Peterson v. State*, 836 S.W.2d 760, 765 (Tex. App.—El Paso 1992, pet. ref'd). We therefore hold that the trial court erred by including those terms in the charge. *See Price v. State,* 457 S.W.3d 437, 441–42 (Tex. Crim. App. 2015) ("If the gravamen of an offense is the result of conduct, the jury charge on culpable mental state should be tailored to the result of conduct[.]"); *Alvarado v. State*, 704 S.W.2d 36, 38–40 (Tex. Crim. App. 1985) (trial court erred in failing to tailor the culpable mental states to the result of conduct for the result-oriented offense of injury to a child).

### b. Egregious Harm Analysis

Having determined that the jury charge was erroneous, we now consider whether the error requires reversal. The record reflects, and Zavala acknowledges, that the defense did not object to the charge; we therefore analyze the issue under the egregious harm standard. *See Nel v. State,* No. 08-17-00075-CR, 2019 WL 257882, at *3 (Tex. App.—El Paso Jan. 18, 2019, no pet.) (not designated for publication) (citing *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex. Crim. App. 2017)). Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Arteaga*, 521 S.W.3d at 338 (citing *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006)). An egregious harm determination must be based on a finding of actual, rather than theoretical, harm. *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005). "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (quoting *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App.

11

1996)).

In examining the record for egregious harm, we consider the following factors: (1) the entire jury charge; (2) the state of the evidence; (3) the closing arguments of the parties; and (4) any other relevant information in the record. *Arteaga*, 521 S.W.3d at 338 (citing *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006)); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), *superseded on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988). We address each factor in turn.

### i. Jury Charge

We first consider the entirety of the jury charge. Here, the relevant abstract portion of the charge read as follows:

> A person commits the offense of assault if he *intentionally, knowingly, or recklessly causes bodily injury* to another including the person's spouse.
>
> A person commits the offense of aggravated assault, if he commits assault and he uses or exhibits a deadly weapon during the commission of the assault, and he *causes* serious bodily injury to another with whom the person had a family, household, or dating relationship. (Emphasis added.)

As such, the charge correctly stated that a person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another, and that a person commits aggravated assault if he commits assault and uses a deadly weapon during the commission of the assault and causes serious bodily injury with whom he had a dating relationship. *See* TEX. PENAL CODE ANN. §§ 22.01(a), 22.02(b)(1). This language correctly limits the offense to the result of Zavala's conduct. *See Budow v. State,* No. 05-16-00572-CR, 2017 WL 1549235, at *3 (Tex. App.—Dallas Apr. 28, 2017, pet. ref'd) (mem. op., not designated for publication) (jury charge correctly limited the offense to the result of conduct where the definition portion of the charge instructed that assault is committed

12

if a person "intentionally or knowingly or recklessly *causes* bodily injury to another") (emphasis in original).

Further, the application paragraph stated as follows:

> If you find from the evidence beyond a reasonable doubt that on or about the 5th day of October, 2014 in El Paso County, Texas, the Defendant David Zavala, did then and there *intentionally or knowingly, or recklessly cause* serious bodily injury to Cynthia Mendoza, to wit: by running a red light and/or colliding with a pole while Cynthia Mendoza was a passenger in Defendant's vehicle, and the defendant did then and there use or exhibit a deadly weapon during the commission of said assault, and the said Cynthia Mendoza was a person with whom the Defendant has or has had a dating relationship, or was a member of the Defendant's household as described by the Texas Family Code, then you shall find the Defendant, David Zavala, guilty of Aggravated Assault. (Emphasis added.)

The emphasized language in the application paragraph also correctly limits the relevant language to the result of the conduct, and this fact likewise weighs against a finding of egregious harm. *See In re I.L.,* 389 S.W.3d 445, 454 (Tex. App.—El Paso 2012, no pet.). Considering the foregoing, we find that the jury charge in its entirety weighs against a finding of egregious harm. *See id.* (instruction which erroneously included circumstances of the conduct language was nevertheless not egregiously harmful where the result of conduct language in the application paragraph was properly included).

### ii. *State of the Evidence*

Next, we consider the state of the evidence. The State's evidence focused on the result of Zavala's conduct, as opposed to the nature of his conduct or the circumstances surrounding it. For example, the State presented evidence that Zavala intended to cause serious bodily injury to Mendoza in the form of his 911 call made shortly before the crash and his admission to police that he told Mendoza, "I hope you fucking die, then" while arguing with her. Zavala also admitted during his interview with law enforcement, which the State presented at trial, that he purposefully

13

ran the red light, resulting in the crash that killed Mendoza. Thus, we find that this factor weighs against a finding of egregious harm as well. *See id.* (State's evidence focusing on the result of the defendant's conduct weighed against a finding of egregious harm).

### iii. Parties' Arguments

We also consider the parties' arguments. Here, the State did not make arguments pertaining to the nature of, or circumstances surrounding, Zavala's conduct; instead, the State argued during its closing that it had proven that Zavala intentionally, knowingly, or recklessly caused serious bodily injury to Mendoza. For example, the State argued that Zavala "caused the ultimate form of serious bodily injury, which was her death," and stated that Zavala "caused a serious bodily injury, caused her death because of his reckless acts." We therefore find that this factor also weighs against an egregious harm determination. *See id.* (parties' arguments weighed against egregious harm finding where the State's arguments focused on the defendant's mental state in causing the result of his conduct, rather than on the nature of his conduct); *Budow*, 2017 WL 1549235, at *4 (parties' arguments weighed against a finding of egregious harm where the State emphasized that it had to prove that the defendant intentionally, knowingly, or recklessly caused bodily injury to the victim, thus limiting its argument to the proper result-of-conduct definition of the culpable mental states).

### iv. Conclusion

Although we normally consider any other relevant information in the record, neither party makes a claim here that other information supports its argument. After considering the *Almanza* factors, we hold that Zavala has not demonstrated that he suffered egregious harm from the erroneous charge, and that reversal in this case is not warranted. *See Arteaga*, 521 S.W.3d at 338;

14

*Almanza*, 686 S.W.2d at 171; *see also In re I.L.*, 389 S.W.3d at 450–51. Zavala's first and second issues are overruled.

### 3. Indictment

Finally, Zavala argues in his third issue that the indictment was fundamentally defective because it did not allege the acts relied upon by the State to demonstrate his recklessness. To constitute an indictment sufficient to confer jurisdiction to a trial court, a charging instrument must charge (1) a person, and (2) the commission of an offense. *Smith v. State*, 309 S.W.3d 10, 17 (Tex. Crim. App. 2010) (citing TEX. CONST. art. V, § 12(b)). "The proper test to determine if a charging instrument alleges 'an offense' is whether the allegations in it are clear enough that one can identify the offense alleged." *Teal v. State*, 230 S.W.3d 172, 180 (Tex. Crim. App. 2007). If an indictment is sufficiently clear in this regard, it is a constitutionally sufficient charging instrument even if it omits an element of the charged offense. *Id.* at 181.

We first address the State's argument that Zavala has not preserved this issue for our review because he failed to object to the alleged deficiency in the indictment. If an indictment omits an element of the charged offense but is otherwise constitutionally sufficient, a defendant who fails to object to the complained-of deficiency in the indictment before the day of trial waives his right to object to the defect, error, or irregularity, and cannot complain about the deficiency on appeal. *Id.* at 181–82; *see also* TEX. CODE CRIM. PROC. ANN. art. 1.14(b). Prior cases have extended this rule to apply to alleged deficiencies in specifying the acts relied upon to constitute recklessness as required under TEX. CODE CRIM. PROC. ANN. art. 21.15. *See, e.g., Studer v. State,* 799 S.W.2d 263, 271–73 (Tex. Crim. App. 1990); *Nguyen v. State*, 506 S.W.3d 69, 78 (Tex. App.—Texarkana 2016, pet. ref'd); *Zuniga v. State*, No. 07-00-0461-CR, 2001 WL 1464147, at *5 (Tex. App.—

Amarillo Nov. 19, 2001) (not designated for publication), *remanded on other grounds*, 144 S.W.3d

477 (Tex. Crim. App. 2004).

> Here, the pertinent language in the indictment alleged that Zavala,
>
> [O]n or about 5th day of October, 2014 and anterior to the presentment of this indictment, in the County of El Paso and State of Texas,
>
> . . .
>
> Paragraph A
>
> did then and there intentionally, knowingly or recklessly cause serious bodily injury to Cynthia Mendoza by running a red light and/or colliding with a pole while Cynthia Mendoza was a passenger in Defendant's vehicle and the Defendant did then and there use or exhibit a deadly weapon, to-wit: a motor vehicle, during the commission of said assault, against Cynthia Mendoza, a person with whom the Defendant had a dating relationship as described by Section 71.0021(b), Family Code,
>
> Paragraph B
>
> did then and there intentionally, knowingly, or recklessly cause serious bodily injury to Cynthia Mendoza by running a red light and/or colliding with a pole while Cynthia Mendoza was a passenger in Defendant's vehicle and the Defendant did then and there use or exhibit a deadly weapon, to-wit: a motor vehicle, during the commission of said assault, and the said Cynthia Mendoza, was a member of the Defendant's household, as described by Section 71.005, Family Code,
>
> And it is further presented in and to said Court that during the commission of the above described felony, the said Defendant did use a deadly weapon, to-wit: a motor vehicle that in the manner of its use or intended use was capable of causing death or serious bodily injury,
>
> AGAINST THE PEACE AND DIGNITY OF THE STATE

As such, the indictment clearly specifies that Zavala was charged with aggravated assault of a

person with whom he was in a dating relationship with the use of a deadly weapon. There is no

evidence in the record that Zavala was uncertain or unclear that he was charged with that offense,

nor does he make that contention on appeal. As such, we find that the indictment was

16

constitutionally sufficient. *See Smith*, 309 S.W.3d at 17; *Teal*, 230 S.W.3d at 180–82. Since the record further demonstrates that Zavala did not object to the alleged defect in the indictment before the first day of trial, we hold that he has waived his argument on appeal. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b); *Teal*, 230 S.W.3d at 180–82; *Studer*, 799 S.W.3d at 271–73; *Nguyen*, 506 S.W.3d at 78; *Zuniga*, 2001 WL 1464147, at *5.[2] Zavala's third issue is overruled.

## CONCLUSION

Having overruled Zavala's issues, we affirm the judgment of the trial court.


GINA M. PALAFOX, Justice

May 24, 2019

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

---

[2] Zavala nonetheless argues that because the indictment does not allege any reckless acts and therefore constitutes a defect of substance (as opposed to one of form), his complaint is not subject to the aforementioned preservation requirements and may be raised for the first time on appeal. *See Gengnagel v. State,* 748 S.W.2d 227, 230 (Tex. Crim. App. 1988), *abrogated by constitutional amendment*, TEX. CONST. art. V, § 12(b). Yet, as the State points out *Gengnagel* was abrogated by subsequent amendments to TEX. CONST. art. V, § 12(b) and TEX. CODE CRIM. PROC. ANN. art. 1.14(b), and the Court of Criminal Appeals has stated that the *Gengnagel* approach to analyzing alleged defects in charging instruments is now erroneous. *See Smith*, 309 S.W.3d at 16–17. As such, we find that Zavala's reliance on *Gengnagel* is misplaced.