**Opinion filed December 18, 2020**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00024-CR

_____

## LARRY GORDON CARPENTER, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR24337**

## M E M O R A N D U M   O P I N I O N

A grand jury indicted Appellant, Larry Gordon Carpenter, Jr., for the third-degree felony offense of assault family violence. Appellant waived his right to a jury trial and elected to proceed before the trial court in a unified hearing. After a bench trial, the trial court convicted Appellant of the indicted offense, assessed his punishment at six years' imprisonment in the Texas Department of Criminal Justice, and sentenced him accordingly.

Appellant presents two issues for our review. First, he claims that the prosecution improperly commented on his failure to testify. Second, he claims that the evidence is insufficient to show that he possessed the requisite *mens rea* to be convicted of assault family violence. We disagree with Appellant's contentions and affirm the judgment of the trial court.

## I. *Factual Background*

Appellant's conviction arises from his felonious assault of his girlfriend, Meredith Nicks. Nicks testified that Appellant was a habitually heavy drinker. On the evening of the assault, Nicks knew that Appellant had been drinking, and he appeared to be intoxicated. While speaking with Nicks, Appellant received a text message, which he told Nicks was from his mother. Appellant then went outside to the shop that was located approximately one hundred feet from Nicks's house. Appellant left his phone inside the house.

Appellant's phone continued to receive text messages. Out of curiosity, Nicks viewed Appellant's phone to determine who was sending the texts. The messages were from an ex-girlfriend of Appellant. Enraged, Nicks went outside to the shop to confront Appellant. The shop was dark, and Appellant's flashlight was the only light illuminating the shop area. Nicks testified that, given Appellant's aggressive nature, she intended to maintain a safe distance while confronting him because she knew it "could be a dangerous situation." During the confrontation, there was a skirmish, and both Nicks and Appellant ended up on the ground. Appellant was on the ground on his back, and Nicks was on top of him, face up. While in this position, Appellant's arms were firmly around Nicks's neck, and his legs were wrapped around her waist. Nicks was unable to explain how they ended up in this position.

Nicks testified that, while Appellant had her restrained, at times she could not breathe and felt faint. Appellant was choking and restraining her by locking one of his arms around her neck and "using [his other arm] to squeeze even tighter." Nicks

2

described how she almost lost consciousness as Appellant was forcibly squeezing her neck. Her vision was turning "gray on the edges"; she felt pressure in her head and ringing in her ears; and she thought she was going to die. Nicks further stated that Appellant "arched his body to pull back on [her] head to where [she] thought he was [going to] break [her] neck."

While restraining Nicks, Appellant repeatedly asked her, "Who are you?" She repeatedly answered by stating her name. Finally, when Nicks answered, "[y]our girlfriend," Appellant released her, stating: "Oh, now you're my girlfriend." Nicks testified that, after that remark, she realized that Appellant had known "exactly who [she] was, and that's what he was trying to get [her] to say all along. That's what would make him let go."

During the confrontation, Nicks's daughter heard Nicks cry out, "You're hurting me." Her daughter eventually called 9-1-1. Soon thereafter, Brown County deputies arrived at the scene, diffused the situation, and arrested Appellant.

Corporal Joe Thomas of the Brown County Sheriff's Office was one of the responding deputies. Corporal Thomas testified that he saw "redness all the way around [Nicks's] neck" that "could possibly be like a blood vessel burst." In addition to other visible injuries that he observed on Nicks, Corporal Thomas further testified that Nicks also had sustained some form of trauma inside of her mouth. According to Corporal Thomas, all of his observations were consistent with Nicks's description of the manner in which Appellant had assaulted her.

Nicks's ex-husband testified that he saw Nicks the next day and that he observed bruising around her throat and lower chin area. In addition to the testimony of these witnesses, the State presented evidence of a similar incident whereby Appellant had strangled an ex-girlfriend in Oregon.

3

After both sides rested and closed and presented closing argument, the trial court convicted Appellant of the indicted offense and sentenced him to six years' imprisonment. This appeal followed.

## II. *Standard of Review – Sufficiency of the Evidence*

In his second issue, Appellant contends that the evidence is insufficient to show that he possessed the requisite intent to commit the charged offense of assault family violence.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all of the evidence admitted at trial and defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor

of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances may be sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

*Analysis*

A grand jury indicted Appellant for the third-degree felony offense of assault family violence. A person commits the offense of assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2020). The offense is a third-degree felony if the assault is committed against a family member, including a person with whom the defendant has a dating relationship, "by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." *Id.* § 22.01(b)(2)(B); *see* TEX. FAM. CODE ANN. § 71.0021 (West 2019).

Appellant asserts that the evidence presented at trial is insufficient to prove, beyond a reasonable doubt, that he possessed the culpable *mens rea* to commit the charged offense. In support of his argument, Appellant focuses primarily on two allegations: (1) that Nicks was the aggressor and testified that she initiated the confrontation with Appellant and (2) that Nicks testified that she did not know how she and Appellant ended up on the ground with Appellant restraining and choking her. Appellant also relies on *Price v. State* for the proposition that, because assault family violence is a result-of-conduct offense, there must be separate culpable mental states (1) that cause the resulting injury to the victim and (2) that result in impeding the victim's normal breathing or circulation of the victim's blood. 457 S.W.3d 437, 442–43 (Tex. Crim. App. 2015); *see* PENAL § 22.01(b)(2)(B).

The assault statute recognizes three culpable mental states: (1) intentionally, (2) knowingly, or (3) recklessly. PENAL § 22.01(a)(1), (b)(2)(B). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." PENAL § 6.03(a) (West 2011). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

Here, Nicks testified that, given Appellant's aggressive nature, she tried to maintain a safe distance when she confronted him because she knew the situation could escalate and become very dangerous. Appellant used a wrestling-type move

6

to choke and restrain Nicks. In doing so, he locked one of his arms around her neck and used "[his other arm] to squeeze even tighter." According to Nicks, as Appellant was squeezing her neck tightly, she almost lost consciousness; her vision was becoming "gray on the edges"; and she felt pressure in her head and ringing in her ears. During the struggle, Appellant arched his body in such a manner while pulling Nick's head back that Nicks believed her neck would break. Nicks believed that Appellant's purpose in restraining her and impeding her ability to breathe was to emphasize his control over their relationship. Nicks eventually realized his intention because he refused to release her from his grasp until she stated that she was his "girlfriend." Although Nicks's testimony alone would be sufficient to support Appellant's conviction, other evidence showed that this physical altercation and Appellant's assaultive conduct caused noticeable injuries, abrasions, bruising, and other trauma to Nicks's neck, throat, and facial area that were consistent with her description of the assault. *See Price*, 457 S.W.3d at 442 (holding that assault family violence cannot be committed without proof of bodily injury); *see also* PENAL § 22.01(a)(1).

*Mens rea* is often established by circumstantial evidence. *See, e.g.*, *Herrera v. State*, 526 S.W.3d 800, 809 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Stobaugh v. State*, 421 S.W.3d 787, 862 (Tex. App.—Fort Worth 2014, pet. ref'd); *In re I.L.*, 389 S.W.3d 445, 456 (Tex. App.—El Paso 2012, no pet.). A defendant's overt acts are generally reliable circumstantial evidence of one's intent. *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009); *Stobaugh*, 421 S.W.3d at 862. The factfinder may infer that a defendant intended the natural consequences of his acts. *Ruffin v. State*, 270 S.W.3d 586, 591 (Tex. Crim. App. 2008). Moreover, intent may also be inferred from the acts, words, and conduct of the accused. *Herrera*, 526 S.W.3d at 809.

We have reviewed the evidence in the light most favorable to the verdict. In this instance, irrespective of Appellant's claims (with which we disagree), we conclude that the cumulative force of all the admitted evidence provided a sufficient basis for the trial court to rationally infer and find beyond a reasonable doubt that Appellant possessed the requisite *mens rea* to commit the charged offense. *See Hooper*, 214 S.W.3d at 13; *see also* PENAL § 22.01(a)(1), (b)(2)(B). Accordingly, because sufficient evidence supports Appellant's conviction for assault family violence, we overrule Appellant's second issue.

### III. *Improper Argument*

In his first issue, Appellant complains that a remark made by the prosecutor during closing arguments impermissibly commented on Appellant's exercise of his right not to testify. During closing argument, the prosecutor stated:

> [H]e just doesn't care about the consequences for other people, the desires of other people, their emotions, their feelings. I mean, he drove two children out of their home and has shown no remorse for that.

Appellant's trial counsel did not object to the prosecutor's statements.

A conviction will ordinarily not be overturned unless the trial court errs. *Johnson v. State*, 169 S.W.3d 223, 228–29 (Tex. Crim. App. 2005). Rule 33.1 requires that a contemporaneous objection must be asserted to preserve error for appellate review. *Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020); *see* TEX. R. APP. P. 33.1. "[O]bjections promote the prevention and correction of errors" by informing the trial court of the basis of the objection, thereby affording it the opportunity to rule on and correct the error, if necessary. *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002). Furthermore, a timely, specific objection provides an opportunity for trial counsel to remedy any alleged error. *Id.*

We note at the outset that Appellant did not preserve his complaint for appellate review because his trial counsel failed to assert any objection to the

prosecutor's allegedly improper remark. Nonetheless, Appellant now claims that no objection was required to preserve error because his right against self-incrimination is purely constitutional and can never be waived. U.S. CONST. amend. V; TEX. CONST. art. I, § 10. Appellant argues that, because he exercised his right not to testify, he did not, and could not, waive his right against self-incrimination.

Instances of allegedly improper argument are not exempt from the error-preservation requirement. *Cooks v. State*, 844 S.W.2d 697, 727–28 (Tex. Crim. App. 1992). Courts have repeatedly emphasized that a defendant must preserve a complaint that the State's closing argument was improper. *See Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004); *Mathis v. State*, 67 S.W.3d 918, 926–27 (Tex. Crim. App. 2002); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see also Cooks*, 844 S.W.2d at 727–28. This rule applies equally to bench trials. *See, e.g.*, *Dorsey v. State*, No. 01-13-01022-CR, 2014 WL 6602517, at *2–3 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, pet. ref'd) (mem. op., not designated for publication); *Parker v. State*, No. 02-11-00032-CR, 2011 WL 5984539, at *2–3 (Tex. App.—Fort Worth Dec. 1, 2011, no pet.) (mem. op., not designated for publication); *Tucker v. State*, No. 07-10-00421-CR, 2011 WL 3652762, at *2–3 & n.2 (Tex. App.—Amarillo Aug. 19, 2011, pet. ref'd) (mem. op., not designated for publication). To preserve his complaint for our review Appellant was required to object in the trial court and pursue an adverse ruling on his objection to the challenged argument. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Cockrell*, 933 S.W.2d at 89; *Cooks*, 844 S.W.2d at 727–28; *Kennedy v. State*, 255 S.W.3d 684, 690 (Tex. App.—Eastland 2008, no pet.); *see* TEX. R. APP. P. 33.1. To pursue an objection "to an adverse ruling," the procedural sequence is not essential. *Archie*, 221 S.W.3d at 699. Rather, "[t]he essential requirement is a timely, specific request that the trial court refuses." *Id.* (quoting *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004)); *see* TEX. R. APP. P. 33.1(a)(1)(A).

Appellant relies on *Marin v. State* for the proposition that certain constitutional rights cannot be forfeited unless the defendant waives them plainly, freely, and intelligently. 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997). While this proposition is generally true, it is equally clear that even some "constitutional guarantees can be waived by failure to object properly at trial." *Id.* at 279 (quoting *Gibson v. State*, 516 S.W.2d 406, 409 (Tex. Crim. App. 1974)).

The Court of Criminal Appeals in *Marin* identified three distinct categories of rules in our adjudicative system: "(1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request." *Id.* Notably, "the Texas law of procedural default . . . only applies to the last category." *Id.* Here, the error alleged by Appellant clearly falls within the last category. *See Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018) (citing *Cockrell*, 933 S.W.2d at 89)); *see Archie*, 221 S.W.3d at 699; *Kennedy*, 255 S.W.3d at 690.

To preserve error on the closing remarks made by the prosecutor, with which Appellant and his counsel on appeal now take issue, Appellant was required to make a timely objection to the challenged remarks and pursue the objection to an adverse ruling. *See Archie*, 221 S.W.3d at 699; *Kennedy*, 255 S.W.3d at 690. Appellant did neither. Therefore, he has forfeited his right to complain about the argument on appeal. *See Threadgill*, 146 S.W.3d at 670; *Cockrell*, 933 S.W.2d at 89. Because Appellant failed to preserve his complaint for our review, we overrule his first issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


December 18, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.