**Opinion filed September 22, 2022**



# In The

# Eleventh Court of Appeals

_____

## No. 11-21-00121-CV

_____

## IN THE MATTER OF D.M.T., A JUVENILE

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. DCJ-7**

## MEMORANDUM OPINION

D.M.T. appeals his delinquent-child adjudication and disposition after a jury found that he had engaged in delinquent conduct by intentionally and knowingly causing the death of Richard Lopez, III, by shooting him with a firearm. *See* TEX. PENAL CODE ANN. § 19.02(b) (West 2019); TEX. FAM. CODE ANN. § 51.03(a)(1) (West 2022). The jury assessed a determinate sentence of confinement for a term of fifteen years in the Institutional Division of the Texas Juvenile Justice Department. D.M.T. challenges the disposition in two issues. We affirm.

*Background Facts*

On the afternoon of September 24, 2020, R.C., the mother of D.M.T., drove D.M.T. and juveniles D.B., K.C., and M.P. to Lopez's house on Calvin Street in Big Spring to purchase marihuana. M.P. had purchased marihuana from Lopez on prior occasions, and he was returning to help his friends purchase marihuana as well. When the group arrived at Lopez's house, M.P. and D.M.T. got out of the car and knocked on the door of the house. Lopez's mother, Amber Gutierrez, answered the door.

Gutierrez testified that she recognized M.P. because he had come to the house on prior occasions. With M.P. was a second person that Gutierrez did not recognize. She testified that they stood facing the road instead of the door. She later identified the second person as D.M.T. Gutierrez brought Lopez to the door, and after he retrieved a backpack from inside the house, Lopez, M.P., and D.M.T. went to sit under the carport.

M.P. testified that the three sat down at a table in the carport to do the transaction. When they sat down, M.P. could see into Lopez's backpack—he testified that he could see that it contained "a lot of weed." M.P. further testified that during the transaction, D.M.T. became upset with Lopez, pulled a gun, and shot Lopez. When he saw D.M.T. pull a gun, M.P. "tried to run to the car as fast as" he could. He testified that he could not remember whether he was in the car or just at the door when he heard two gunshots. M.P. testified that D.M.T. got into the car through the driver's side with Lopez's backpack. The backpack contained a gun and over a pound of marihuana. Once in the car, D.M.T. gave the used gun to D.B., and R.C. drove the group to K.C.'s house. M.P. and D.B. disposed of the backpack. M.P. later provided the Big Spring Police Department with its location, and it was later recovered.

2

M.P. testified that he did not see D.M.T. shoot Lopez, but he did look back while he was running to the car and saw Lopez bleeding from the chest. Gabriel Morales, the first paramedic at the scene, testified that Lopez suffered penetrating wounds to the chest, back, and arm. Morales administered CPR using an AutoPulse device and assisted in transporting Lopez to the hospital. Lopez remained asystole—showing no heart rate or breathing—during treatment and transport. Morales testified that Lopez died before reaching the hospital.

Texas Ranger Tod Reed located two 9mm cartridges at the scene and possible bullet defects on the western wall of the carport. Through his investigation, Ranger Reed identified five potential suspects: D.M.T., D.B., R.C., K.C., and M.P. The morning after the shooting, M.P. turned himself in to the Big Spring Police Department. Ranger Reed apprehended K.C. and D.M.T. at K.C.'s home. Ranger Reed went to K.C.'s house, and K.C. and her mother answered the door. K.C.'s mother gave consent to search the house for D.M.T. During the search, Ranger Reed located D.M.T.—he was in a back bedroom under a blanket or a sheet. Because the suspects were apprehended more than four hours after the event, the investigators were unable to test for gunshot residue.

The investigation revealed additional evidence. Sara Rosa, who lived across the street from Lopez's house, testified that she saw two young Black boys sitting with Lopez under the carport briefly before she heard a gunshot. When she looked back at the carport she saw "both of the black kids running to the [silver vehicle] that was parked out front." Rosa also testified that the two boys were running within three feet of one another to the silver vehicle and that she heard the boy in the blue shirt say, "Oh, s--t." She thought the boy in the white shirt may have been taller. Security footage from another neighbor shows a silver GMC fleeing the area and running a stop sign immediately after the offense. Finally, Nicholas Lopez made a

3

statement to the Big Spring Police Department stating that he learned that D.B. was attempting to "get rid of the 9[mm] that was involved in the shooting."

The evidence regarding the height and shirt color of M.P. and D.M.T. was conflicting. Trooper Reed testified that he would estimate M.P.'s height as 5′10″ and D.M.T.'s height at 5′4″ or 5′5″. Gutierrez estimated that the second person, whom she later identified as D.M.T., was 5′6″ or 5′7″. She also testified that she thought M.P. was wearing a white shirt. However, M.P. testified that he is 6′3″ and that D.M.T. had on a white shirt.

D.M.T., R.C., and M.P. were all charged with the murder of Lopez. At trial, the State called M.P. and R.C. to testify. Hardy Wilkerson, the elected District Attorney for the 118th Judicial District, testified that he would no longer pursue murder charges against M.P. or R.C. He granted use immunity to both witnesses, but neither was offered a deal to testify. *See Smith v. State*, 70 S.W.3d 848, 860 (Tex. Crim. App. 2002) (Cochran, J., concurring) (explaining the difference between use immunity and transactional immunity).

*Analysis*

*Recertification of Amended Petition*

In D.M.T.'s first issue, he contends that the trial court erred in imposing a determinate sentence because the grand jury did not recertify the State's third amended petition. He asserts that the State's first petition, which was the only petition certified by the grand jury, did not properly charge him with murder because it omitted the manner and means—shooting the victim with a firearm. D.M.T. asserts that the State's third amended petition was the only one that "properly contained both the allegation of *mens rea* and the manner and means leading to death," and that the failure of the grand jury to recertify it requires us to reverse the determinate sentence and remand the case for the imposition of an indeterminate

4

sentence. We note that D.M.T.'s trial counsel preserved this issue for appellate review by objecting on this basis prior to sentencing.

When a juvenile commits a felony, the juvenile court may impose either an indeterminate sentence or a determinate sentence. FAM. § 54.04. If a juvenile commits one of the enumerated offenses in Section 53.045 of the Family Code, the State may file a petition for determinate sentencing with a grand jury. *Id.* § 53.045(a)(1). If the grand jury certifies the petition for determinate sentencing, the juvenile may be sentenced to commitment in the Texas Juvenile Justice Department with a possible transfer to the Texas Department of Criminal Justice. *Id.* § 54.04(3). The following steps must be taken in order for a court to impose a determinate sentence: (1) the State's petition must allege that the juvenile committed one of the crimes enumerated in Section 53.045; (2) the State must refer the petition to the grand jury; (3) the grand jury must approve the petition by a vote of nine members; (4) the approval of the grand jury must be certified to the court; and (5) the certification must be entered into the record. *Id.* §§ 53.045, 54.04(d)(3).

Although a juvenile delinquency proceeding is quasi-criminal in nature, *see In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999), the Texas Rules of Civil Procedure govern such proceedings. FAM. § 51.17(a). The petition in a civil juvenile proceeding is analogous to the indictment procedure in criminal proceedings. *Id.* § 53.045(b). A petition in a civil case must provide "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a). "The [Texas] Legislature [has] provided different rules for different stages of a juvenile proceeding." *In re J.P.*, 136 S.W.3d 692, 630 (Tex. 2004). The petition at the adjudication stage must state "with reasonable particularity the time, place, and manner of the acts alleged." FAM. § 53.04(d)(1). However, a petition in a juvenile adjudication "need not allege an offense with the particularity of a criminal

indictment so long as the charge is reasonably definite." *In re F.C.*, No. 03-02-00463-CV, 2003 WL 21282766, at *1 (Tex. App.—Austin June 5, 2003, no pet.) (mem. op.); *accord In re J.P.*, No. 04-07-00612-CV, 2008 WL 4595030, at *3 (Tex. App.—San Antonio Oct. 15, 2008, no pet.) (mem. op.); *In re M.T.*, No. 13-05-434-CV, 2007 WL 2265072, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 9, 2007, no pet.) (mem. op.). Further, "the strict prohibition against amendment of pleadings in criminal cases is not applicable in juvenile proceedings." *In re J.G.*, 195 S.W.3d 161, 181 (Tex. App.—San Antonio 2006, no pet.) (citing *In re K.H.*, No. 04-04-00924-CV, 2005 WL 3396588, at *2 (Tex. App.—San Antonio Dec. 14, 2005, no pet.) (mem. op.)). The State may amend its petition at any time or "under circumstances" that are "basically fair to the minor." *Id.*

In this case, the grand jury approved and certified the original petition, which read in pertinent part as follows:

**Murder (F1)**

On or about September 24, 2020 in Howard County, Texas, Juvenile-Respondent did then and there intentionally or knowingly commit to [sic] the death of RICHARD LOPZ [sic], III, hereafter styled the victim, in violation of Section 19.02(b) of the Texas Penal Code, Against the Peace and Dignity of the State. Such conduct is delinquent conduct as defined by Section 51.03(a), Texas Family Code for the reason that it violates a penal law of the State punishable by confinement or imprisonment if committed by an adult.

(Emphasis in original). The State's first amended petition corrected the spelling of the victim's name; substituted the phrase "caused the death of" in place of the original phrase, "commit to the death of"; updated the *mens rea* to "intentionally *and* knowingly"; and added a charge for aggravated robbery.

The State's second amended petition removed the charge for aggravated robbery, leaving the murder charge unchanged. The State's third and final amended petition changed the alleged time from "On or about" to "In the afternoon of" and

added a specific address as well as the phrase "by shooting him with a firearm." Thus, the third amended petition read as follows:

> In the afternoon of September 24, 2020, at 3608 Calvin St., Big Spring, Howard County, Texas, Juvenile-Respondent did then and there intentionally and knowingly caused [sic] the death of RICHARD LOPEZ, III, hereafter styled the victim, by shooting him with a firearm. In violation of Section 19.02(b) of the Texas Penal Code, Against the Peace and Dignity of the State. Such conduct is delinquent conduct as defined by Section 51.03(a), Texas Family Code for the reason that it violates a penal law of the State punishable by confinement or imprisonment if committed by an adult.

D.M.T. contends that the third amended petition materially and substantially changed the nature of the allegations against him. His contention is based on his assertion that the original petition did not sufficiently allege that he committed murder under Section 19.02(b)(1). D.M.T. contends that under *In re S.D.W.*, the third amended petition should have been recertified by the grand jury. 811 S.W.2d 739, 744 (Tex. App.—Houston [1st Dist.] 1991, no pet.). Conversely, the State asserts that under *In re J.G.*, the third amended petition did not need to be recertified because it did not materially change the allegation against D.M.T. set out in the original petition. 195 S.W.3d at 181.

In *S.D.W.*, the State filed a multiple-count petition alleging that a juvenile engaged in delinquent conduct by committing murder and aggravated robbery. 811 S.W.2d at 742. The State later moved to waive Count III of the petition, which alleged a "capital murder charge." *Id.* at 743. The State later sought to reallege Count III in an amended petition. *Id.* On appeal, the juvenile argued that the trial court's judgment was void because "the State did not present the second amended petition to the grand jury." *Id.* at 744. According to the juvenile, because "the State waived one of the murder allegations contained in the original petition, when the State reasserted the murder allegation in the amended petition, it was required to

again bring the petition before the grand jury." *Id.* The First Court of Appeals agreed, holding that "the amended petition, which included an allegation that previously had been waived, should have been presented to the grand jury." *Id.* The court's analysis in *S.D.W.* included the fact that "the record [was] devoid of any written indication the original petition was ever presented to the grand jury." *Id.*

*J.G.* involved an amended petition wherein the prosecutor deleted an allegation of indecency with a child by exposure, handwrote "Texas" on the petition, and changed the spelling of the juvenile's first name. 195 S.W.3d at 180. The San Antonio Court of Appeals concluded that these changes were not required to be recertified by the grand jury because no offense was added and because the changes were not unfair to the defendant. *Id.* at 181–82. The court cited its prior holding in *In re R.H.* for the proposition that "[b]ecause the amended petition charged no additional or different offense than the original petition approved and certified by the grand jury and the record reveals no prejudice to R.H.'s substantial rights, the amended petition was not required to be approved and certified by the grand jury." *Id.* at 181 (quoting *In re R.H.*, No. 04-97-00706-CV, 1998 WL 484695, at *2 (Tex. App.—San Antonio 1998, no pet.) (not designated for publication).

The San Antonio Court of Appeals addressed *S.D.W.* in *J.G.* *Id.* at 180–81. It first distinguished *S.D.W.* on the basis that the record in *J.G.* contained a written certificate of approval for the original petition. *Id.* at 181. The court further distinguished *S.D.W.* on the basis that the State tried to reallege a count that it had waived without obtaining a recertification from the grand jury. *Id.*

Here, the original petition that was certified by the grand jury alleged that D.M.T. "did . . . intentionally or knowingly commit to [sic] the death of RICHARD LOPZ [sic], III, hereafter styled the victim, in violation of Section 19.02(b) of the Texas Penal Code." As compared to the original petition, the State's third amended

petition made the following changes: (1) it made "intentionally or knowingly" conjunctive rather than disjunctive; (2) it provided more specificity of the time, date, and location of the alleged murder; (3) it corrected the spelling of the victim's name and removed a typographical error; and (4) it added a manner and means by which D.M.T. allegedly murdered the victim by adding the words "by shooting him with a firearm."

The first three changes are in the character of the changes addressed in *J.G.* because they did not allege a different or additional offense and there is no allegation that they misled Appellant or were unfair to him. *See id.* at 181–82. The fourth change, which added "by shooting him with a firearm," also did not change the offense charged and did not otherwise prejudice D.M.T.

Section 19.02(b)(1) of the Penal Code provides that a person commits murder if he intentionally or knowingly causes the death of an individual. PENAL § 19.02(b)(1). This statute does not specify a particular manner or means by which the conduct must be committed to constitute murder. *Id.*; *see Latulas v. State*, No. 09-18-00313-CR, 2020 WL 2046160, at *2 (Tex. App.—Beaumont Apr. 29, 2020, pet. ref'd) (mem. op., not designated for publication) ("[N]othing in section 19.02(b)(1) requires the State to prove that the defendant used an object, such as a knife, to show the defendant is guilty of committing murder."). Accordingly, the original petition was sufficient to allege that Appellant committed murder, under Section 19.02(b)(1), without alleging that he used a firearm to commit the murder. *See Bowen v. State*, 640 S.W.2d 929, 930 (Tex. Crim. App. [Panel Op.] 1982) ("It is sufficient simply to allege the elements of the offense, without specifying the manner and means used to commit the murder.").[1] The record indicates that Appellant's

---

[1]As explained in the Texas Practice Series:

ability to prepare a defense was not adversely affected by the State's amendment. Accordingly, we overrule Appellant's first issue.

*Accomplice Witness Instruction*

In Appellant's second issue, he contends that the trial court erred in failing to sua sponte instruct the jury on accomplice-witness testimony in the trial court's charge to the jury because M.P. and R.C. are accomplices as a matter of law. Appellant further contends that the trial court's error egregiously harmed him because there is no other evidence in the record that connects him to the commission of the offense.

Juvenile proceedings are not wholly civil proceedings; they are considered "quasi-criminal in nature." *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex.1999); *In re I.L.*, 389 S.W.3d 445, 451 (Tex. App.—El Paso 2012, no pet.). In *C.O.S.*, the Texas Supreme Court determined that precedent from analogous adult criminal proceedings may be instructive in juvenile cases. *In re C.O.S.*, 988 S.W.2d at 765–67. Courts have determined that it is appropriate to conduct a harm analysis under the criminal standard set forth in *Almanza v. State*[2] for a claim of charge error in juvenile proceedings. *In re I.L.*, 389 S.W.3d at 452–53 (collecting cases); *see In re R.D.R.*, No. 11-12-00287-CV, 2014 WL 4348061, at *4 (Tex. App.—Eastland

---

In terms of conferring jurisdiction in the district court, the indictment need not allege the manner and means of committing the murder; it need only track the statutory language. Nevertheless, because a defendant would be entitled to notice of the manner and means by the mere filing of a motion to quash the indictment, the better practice is to allege the manner and means by which the offense was committed from the outset.

Michael B. Charlton, 6 *Texas Practice: Texas Criminal Law* § 10.2 (2d ed. 2021) (Murder) (footnotes omitted). Here, the record does not reflect that Appellant filed a motion seeking additional notice of the charge against him. The trial court brought up the omission of the manner and means at a pretrial hearing. After the attorneys and the trial court discussed the matter, the State agreed to amend the petition. Appellant's trial counsel did not object to the amendment.

[2]686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Aug. 29, 2014, no pet.) (mem. op.) (collecting cases); *see also State v. Ambrose*, 487 S.W.3d 587, 594 (Tex. Crim. App. 2016).

Under *Almanza*, our first duty in analyzing a jury charge issue is to decide whether error exists. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017) (citing *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009)). If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *Id.* When, as in this case, the error was not objected to, reversal is proper only if the error caused actual, egregious harm to the defendant. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). Such determination must be based on a finding of "actual rather than theoretical harm." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

"An adjudication of delinquent conduct or conduct indicating a need for supervision cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the child with the alleged delinquent conduct or conduct indicating a need for supervision; and the corroboration is not sufficient if it merely shows the commission of the alleged conduct." FAM. § 54.03(e). This provision of the Family Code is similar to the provision found in the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). We therefore find the cases addressing Article 38.14 to be instructive in this matter. If an accomplice to the offense testifies for the State, the accomplice's testimony must be corroborated by non-accomplice evidence that tends to "connect the accused to the offense." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011) ("*Smith II*"). When the issue is raised by the evidence, the trial court must instruct the jury on the accomplice-witness rule because it is the "law applicable to the case."

*Zamora v. State*, 411 S.W.3d 504, 513 (Tex. Crim. App. 2013); *see* CRIM. PROC. art. 36.14 (West 2007).

An accomplice is a person who participates in the offense before, during, or after its commission with the requisite mental state. *Smith II*, 332 S.W.3d at 439 (citing *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007)). The accomplice-witness rule recognizes that "[b]ecause an accomplice is, by definition, involved in the very crime being prosecuted," accomplices may be motivated to testify in an attempt to "reduce or eliminate their own punishment . . . shift blame or curry favor from prosecutors by testifying, even falsely, against others." *Freeman v. State*, 352 S.W.3d 77, 82 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Therefore, the legislature provided that all such testimony be corroborated by non-accomplice evidence that tends to connect the defendant to the crime. *Id.*; *see* FAM. § 54.03(e); CRIM. PROC. art 38.14.

If a witness is an accomplice as a matter of law, the trial court must instruct the jury that the witness is an accomplice and that his testimony must be corroborated. *Zamora*, 411 S.W.3d at 510. The Court of Criminal Appeals has held that a witness is an accomplice as a matter of law in the following situations:

- If the witness has been charged with the same offense as the defendant or a lesser-included offense;

- If the State charges a witness with the same offense as the defendant or a lesser-included of that offense, but dismisses the charges in exchange for the witness's testimony against the defendant; and

- When the evidence is uncontradicted or so one-sided that no reasonable juror could conclude that the witness was not an accomplice.

*Ash v. State*, 533 S.W.3d 878, 886 (Tex. Crim. App. 2017). Here, Ranger Reed testified that M.P. and R.C. were both charged with the murder of Lopez, along with Appellant, D.B., and K.C. Thus, M.P. and R.C. are accomplices as a matter of law. *See id.* They remained accomplices as a matter of law even though the district attorney gave them use immunity. *See Smith II*, 332 S.W.3d at 439 (noting that when a witness agrees to testify in exchange for dismissal of a charge, he continues to be regarded as an accomplice). Therefore, Appellant is correct that the trial court should have instructed the jury on the accomplice-witness rule because it is the "law applicable to the case." *See Zamora*, 411 S.W.3d at 513.

"Under the egregious harm standard, the omission of an accomplice-witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Ambrose*, 487 S.W.3d at 598 (quoting *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002)). In *Casanova v. State*, the Court of Criminal Appeals stated that the strength of the corroborating evidence is what determines whether failure to submit the instruction is harmful. 383 S.W.3d 530, 539 (Tex. Crim. App. 2012). The strength of corroborating evidence emanates from "(1) its reliability or believability and (2) how compellingly it tends to connect the accused to the charged offense." *Id.* Our task is to analyze the evidence tending to connect the person with the charged offense rather than corroboration as to every aspect of an accomplice's testimony or element of a crime. *Ambrose*, 487 S.W.3d at 598. We eliminate the accomplice-witness testimony from our consideration and examine only the non-accomplice evidence. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). The reviewing court is essentially determining whether the jury would have found that the

accomplice witness's testimony was corroborated had the jury been properly instructed that it must do so in order to convict. *See Casanova*, 383 S.W.3d at 540.

In this case, non-accomplice evidence corroborated M.P.'s accomplice-witness testimony. The victim's mother, Gutierrez, testified that her son sold marihuana and that M.P. had been to her house on multiple occasions to buy drugs. She further testified that immediately before the shooting, M.P. and Appellant came to the house to see Lopez.

Rosa, a neighbor, testified that she saw two young Black boys sitting with Lopez under the carport briefly before she heard a gunshot. When she looked back at the carport she saw "both of the black kids running to the [silver vehicle] that was parked out front." Rosa also testified that the two boys were running within three feet of one another to the silver vehicle and that one of them said, "Oh, s--t." Security footage from another neighbor shows a silver GMC fleeing the area and running a stop sign immediately after the offense. Evidence that the defendant was in the presence of the accomplice at or near the time or place of the offense is proper corroborating evidence. *Keith v. State*, 384 S.W.3d 452, 457–58 (Tex. App.—Eastland 2012, pet. ref'd) (citing *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997)).

Lopez's red and black backpack that M.P. identified at trial was offered into evidence. Finally, D.M.T. fled from the scene and then attempted to hide from the police by covering himself with bedding. This conduct demonstrates consciousness of guilt that can support the corroboration of accomplice testimony. *See Bradley v. State*, 48 S.W.3d 437, 442 (Tex. App.—Waco 2001, pet. ref'd) (Evidence of flight can be a corroborating circumstance because it demonstrates consciousness of guilt.). All of this non-accomplice evidence corroborated M.P.'s testimony and tends to connect Appellant to the commission of the offense.

The in-court testimony from R.C. (Appellant's mother) was scant. She testified that she drove Appellant and the other juveniles to Lopez's house. She also testified that M.P. and Appellant went to the door. Later during her testimony, recordings of R.C.'s statements to the police were offered into evidence and played to refresh her recollection. After the recordings were played, she was asked if she stated during the recordings that Appellant murdered or shot Lopez. She agreed that she made these statements. However, she attributed the statements to the fact that she "wasn't in the right state of mind" at the time she made the statements, because she "was detoxing off of methamphetamines."

Only an accomplice's in-court testimony must be corroborated. *Bingham v. State*, 913 S.W.2d 208, 211–213 (Tex. Crim. App. 1995). However, an accomplice's out-of-court statement does not, itself, have to be corroborated under Article 38.14, and the jury is entitled to regard it as independent evidence of a defendant's guilt. *Id.*; s*ee Archie v. State*, 340 S.W.3d 734, 737 n.3 (Tex. Crim. App. 2011). Because R.C.'s out-of-court statements were not required to be corroborated, we focus our analysis on her in-court testimony. Her testimony that she took Appellant to Lopez's house and that Appellant got out there was corroborated by the same non-accomplice evidence that corroborated M.P.'s in-court testimony. R.C.'s in-court testimony, in which she agreed that she made the incriminating statements to the police, was cumulative of her out-of-court statements, which did not need to be corroborated. Accordingly, the trial court's failure to include an accomplice-witness instruction did not cause Appellant egregious harm such that he was deprived of his right to a fair trial. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


September 22, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.